IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEVON TYRONE EVANS,

                                          OPINION AND ORDER

                Plaintiff,

                                          20-cv-860-bbc

     v.

ERIC HANSEN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Defendant Eric Hansen, a police officer, fired nine gunshots at the back of plaintiff Devon Tyrone Evans, after pursuing plaintiff on a foot chase through a residential neighborhood in Menomonee Falls, Wisconsin. Plaintiff brought this action against defendant under 42 U.S.C. § 1983, contending that defendant violated his constitutional rights under the Fourth Amendment by using objectively unreasonable force against him. Defendant contends that his use of deadly force was reasonable because he thought that plaintiff was armed and presented a risk of imminent harm to other officers.

       Defendant has moved for summary judgment, dkt. #28, contending that the material facts are undisputed and that plaintiff's claims fail as a matter of law. However, there are genuine disputes of material fact regarding whether a reasonable officer under the circumstances would be justified in using deadly force, so summary judgment will be denied.

       The following facts are undisputed unless otherwise noted. I note that some of defendant's proposed facts relied solely on a report from the Waukesha County district attorney's office, dkt. #31-1, which described the incident and the district attorney's

1

decision not to charge defendant with any criminal offense. The report is hearsay, as it consists of out-of-court statements that defendant is relying on for their truth. The report will be excluded as inadmissible hearsay and will not be considered further in this decision. MMG Fin. Corp. v. Midwest Amusements Park, LLC, 630 F.3d 651, 656 (7th Cir. 2011) (party may not rely on inadmissible hearsay at summary judgment).

## UNDISPUTED FACTS

On November 6, 2018, at approximately 12:55 p.m., police dispatch reported that a gasoline theft had just occurred at a gas station in Menomonee Falls, Wisconsin. Dispatch also provided a description of the suspect vehicle. Menomonee Falls Police Department Officers Brooks and Donovan Carlson were assigned to the call. Officer Brooks broadcast the information that he had located the suspect vehicle and was attempting to conduct a traffic stop. Brooks then reported that the suspect vehicle had stopped briefly but had accelerated and fled as Brooks approached. Officers Brooks and Carlson pursued the suspect vehicle for a short time until the vehicle crashed into another vehicle. The suspect vehicle drove off from the scene of the crash, and Officer Brooks continued to pursue it. Officer Carlson stayed to check on the other vehicle involved in the crash.

Officer Brooks then radioed that the suspect vehicle had stopped, and he requested assistance to his location. Officer Carlson arrived at Officer Brooks' location, where Brooks was arresting a woman who had been in the suspect vehicle. Officer Brooks told Officer Carlson that the other passenger had fled on foot into a residential area. Carlson drove

around looking for plaintiff, but did not see him. (The fleeing suspect was plaintiff Devon Tyrone Evans, though the officers did not know the identify of the suspect at the time.)

Meanwhile, several additional officers, including defendant Officer Eric Hansen, had heard about the vehicle pursuit and a fleeing suspect on the radio and had responded to the area. Defendant arrived at the residential area where plaintiff had fled, and he, Officer Carlson and other officers began to search the residential area on foot. The officers did not find plaintiff, so they returned to their squad cars to set up a perimeter around the area. A woman approached defendant while he was in his squad car and told him that someone was hiding in the back yard of a nearby house. Dispatch also advised officers that residents in the area were reporting that someone was running through their backyards. Defendant broadcast that information to all squads and activated his squad lights to alert other officers to his location.

Meanwhile, plaintiff ran into a house to hide from the police. The homeowner woke up and confronted plaintiff, so plaintiff left. While plaintiff was running from the house, one of his shoes came off in some mud. He picked up the shoe, which was black, and continued to run, holding the shoe. The homeowner reported the break-in to the police, and it was broadcasted over dispatch that there had been an attempted burglary in the area and that the fleeing suspect may have broken into someone's house.

At one point, defendant saw plaintiff running through backyards and between houses. Defendant thought that plaintiff was running with something in his hands, and was concerned that plaintiff was holding a firearm. Defendant told other officers over the radio

3

to "Watch his hands."  (Other officers also thought plaintiff was holding something that could be a gun.)  Defendant exited his squad car and pursued plaintiff through a residential area towards a church.  Defendant pointed his gun at plaintiff and commanded him to stop, but plaintiff did not stop.  Other officers also commanded plaintiff to stop, but he continued running toward the church. (Defendant says that plaintiff turned toward him and pointed what appeared to be a long gun and yelled either, "Fucking shoot me," or "Fuck you, shoot me!"  Another officer thought that plaintiff yelled, "I'll shoot, I'll shoot!"  Plaintiff denies saying that he was going to shoot. According to plaintiff, he was holding his hands in the air while he ran, and was yelling, "Don't shoot! Don't shoot!"  He also says that the only thing he was holding during the chase was his shoe, but that he stopped at some point before reaching the church and put it back on his foot.)

Plaintiff hid behind garbage cans on the side of the church.  Defendant approached plaintiff from behind, and another officer, Detective Barry Babler, approached him from the front.  Other officers were also moving in toward plaintiff's position.  The parties dispute what happened.

According to plaintiff, he realized that he was boxed in and surrounded by police officers, so he decided to surrender.  Plaintiff says that he stood up with his hands raised over his head and started walking slowly forward.  After he had been standing for approximately ten seconds, defendant shot him multiple times in the back.

According to defendant, he and other officers ordered plaintiff to get down and show his hands, but plaintiff refused.  Defendant thought that plaintiff appeared to be kneeling

4

with a long gun pointed in the direction of Detective Babler, and was concerned that plaintiff intended to ambush the detective. According to defendant, he shot plaintiff with his service gun to prevent plaintiff from harming other officers.

It is undisputed that defendant fired his gun nine times at plaintiff's back, and that three of the shots hit plaintiff. Plaintiff was provided medical attention at the scene and was then transported to the hospital. It is also undisputed that plaintiff was unarmed when he was shot.

OPINION

Plaintiff contends that defendant's decision to shoot him multiple times in the back violated his constitutional rights. Defendant responds that his decision was justified by plaintiff's own actions, and by defendant's reasonable belief that plaintiff was armed and in a position from which he could ambush other officers.

Defendant's use of deadly force was a seizure subject to the reasonableness requirement of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7, 11 (1985); Fitzgerald v. Santoro, 707 F.3d 725, 733 (7th Cir. 2013) (citing Graham v. Connor, 490 U.S. 386, 396–97 (1989)). Whether force is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Garner, 471 U.S. at 11–12. Courts must evaluate the reasonableness of an officer's action not through

"the 20/20 vision of hindsight" but from "the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97; see also Weinmann v. McClone, 787 F.3d 444, 448-49 (7th Cir. 2015). An officer is justified in using deadly force when he reasonably believes the suspect poses an imminent threat of serious physical harm to himself or others. Siler v. City of Kenosha, 957 F.3d 751, 758–59 (7th Cir. 2020).

In this instance, the relevant inquiry is whether, at the time he fired his weapon, defendant reasonably believed that plaintiff posed an imminent threat of death or serious bodily injury to him or others. Defendant argues that his decision to shoot plaintiff was objectively reasonable based on the information he had at the time he shot plaintiff: plaintiff had stolen gas, crashed into another vehicle, and fled; plaintiff had led police on a foot chase through a residential area, carrying something in his hands that looked like a gun; plaintiff had yelled, "Fucking shoot me," or "Fuck you, shoot me" while running; plaintiff may have broken into someone's home; plaintiff ignored multiple officer commands to stop; and plaintiff had taken a position behind a church that would have allowed him to ambush officers with what appeared to be a gun.

If defendant's version of events were undisputed, I would agree with him that his decision to fire his weapon at plaintiff was not excessive force. It is objectively reasonable under the Fourth Amendment for an officer to shoot a suspect when the suspect is armed

6

and pointing a weapon toward someone, or even when the suspect is just reaching for a weapon. Helman v. Duhaime, 742 F.3d 760, 763 (7th Cir. 2014). See also Weinmann, 787 F.3d at 449–50 ("[I]f [decedent] had the gun raised to his shoulder and pointed at [defendant-officer], then [defendant-officer] would have been justified in using deadly force. . . ."); DeLuna v. City of Rockford, 447 F.3d 1008, 1011-12 (7th Cir. 2006) (officer's use of deadly force was reasonable when suspect said "I've got something for you. You are going to have to kill me," and refused to raise his hands or stop walking toward officer); Conley-Eaglebear v. Miller, No. 16-3065, 2017 WL 7116973, at *2 (7th Cir. Sept. 26, 2017) (officer's decision to shoot suspect was reasonable where suspect drew gun from his waistband and looked toward officer).

However, plaintiff disputes defendant's version of events. According to plaintiff, at the time defendant shot him, plaintiff was clearly unarmed, was standing with his hands raised above his head, and was attempting to surrender. In addition, plaintiff says that defendant saw him running with his hands over his head and yelling, "Don't shoot!" Plaintiff argues that if a jury believed plaintiff's version of events, the jury could reasonably conclude that defendant's use of deadly force was excessive under the circumstances. Catlin v. City of Wheaton, 574 F.3d 361, 367 (7th Cir. 2009) (summary judgment often inappropriate in excessive force cases where "parties typically tell different stories about what happened").

Plaintiff's argument is persuasive. It is well-established that a police officer cannot use force against a suspect "who is subdued and complying with the officer's orders."

Johnson v. Scott, 576 F.3d 658, 660 (7th Cir. 2009). See also Helman, 742 F.3d at 763 ("It would have been objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner."). This is so even if the suspect presented a substantial risk of harm at an earlier point during the interaction. Circumstances may change, and a person has a right not to be seized through the use of deadly force unless he is putting another person in imminent danger or actively resisting arrest under circumstances that warrant that degree of force. Garner, 471 U.S. at 11 ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); Weinmann, 787 F.3d at 448. Thus, even if defendant would have been justified in using deadly force while plaintiff was running through a residential neighborhood with what appeared to be a firearm, defendant would no longer be justified in using deadly force if he saw plaintiff stand up and surrender with his hands over his head. See also Strand v. Minchuk, 910 F.3d 909, 915 (7th Cir. 2018) ("If the facts and circumstances show that an individual who once posed a threat has become 'subdued and complying with the officer's orders,' the officer may not continue to use force."); Horton v. Pobjecky, 883 F.3d 941, 950 (7th Cir. 2018) ("Even though an officer may in one moment confront circumstances in which he could constitutionally use deadly force, that does not necessarily mean he may still constitutionally use deadly force the next moment."); Cyrus v. Town of Mukwonago, 624 F.3d 856, 863 (7th Cir. 2010) (looking at "totality of circumstances" means that "a jury might reasonably conclude that the circumstances of the encounter here reduced the need for force as the situation progressed"); Ellis v. Wynalda, 999 F.2d 243, 247 (7th Cir. 1993)

("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.").

Citing two cases that have been overruled, defendant argues that the court should disregard plaintiff's version of events because it is supported only by plaintiff's "self-serving" declaration. This argument is frivolous. Hill v. Tangherlini, 724 F.3d 965, 967 (7th Cir. 2013) ("self-serving" declarations based on personal knowledge are "perfectly admissible evidence"). Plaintiff's sworn declaration is sufficient evidence to create a genuine factual dispute regarding events to which he has personal knowledge. Moreover, defendant has presented no evidence that would conclusively contradict plaintiff's version of events, such as video or audio footage of the shooting incident.

Defendant also argues that he is entitled to qualified immunity. The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Locke v. Haessig, 788 F.3d 662, 666 (7th Cir. 2015). However, it was clearly established long before the events of this case that a police officer could not use deadly force on a suspect who was attempting to surrender and presented no risk of imminent harm to others. Garner, 471 U.S. at 11; Helman, 742 F.3d at 763; Johnson, 576 F.3d at 660; Ellis, 999 F.2d at 247. Because plaintiff has submitted evidence from which a jury could conclude that defendant used deadly force despite plaintiff's obvious attempt to surrender, defendant is not entitled to qualified immunity.

ORDER

IT IS ORDERED that

1. Defendant Eric Hansen's motion for summary judgment, dkt. #28, is DENIED.

2. The clerk of court is directed to schedule a conference with Magistrate Judge Crocker so that a trial schedule may be set.

Entered this 11th day of March, 2022.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge